NELSON, ADMR., APPELLEE, *v.* HORTON ET AL., APPELLANTS.

[Cite as Nelson v. Horton (1971), 31 Ohio App. 2d 159.]

(No. 432—Decided November 29, 1971.)

*Mr. Albert Wettstein,* for appellee.
*Messrs. Ahlrichs, Murdock & Rinear,* for appellants.

HESS, P. J. This is an appeal on questions of law from a judgment entered by the Court of Common Pleas of Clermont County, Ohio, for damages following a verdict in favor of the plaintiff, appellee herein. The parties will be referred to as they appeared in the trial court.

There is no substantial dispute on the facts.

On October 29, 1966, Glen H. Nelson and his daughter, Rebecca Ann Nelson, aged four years, were riding in

a motor vehicle which was being operated by Glen H. Nelson in a northerly direction on state route 32 at or near old state route 74 in Clermont County, Ohio. Old state route 74 runs in a general east and west direction. Stop signs were in place directing vehicular traffic to stop before entering or crossing route 32, which was a through highway with a median strip.

As Glen H. Nelson approached route 74, one Flora Harden had driven her automobile from the east and was stopped at the stop sign on route 74 before entering route 32. At approximately the same time the defendant, Gary Horton, had driven a motor vehicle (truck owned by William E. Turner and loaned to Gary Horton east on route 74). The truck was stopped before entering route 74. One Leon Moore was riding in the truck driven by Gary Horton.

After having stopped at the stop sign, the truck was driven into the median strip area where it was stopped again. Then the truck proceeded on and ran into the automobile driven by Glen H. Nelson which was being driven north in the northbound lane of route 32 causing it to be turned over on the body of Rebecca Ann Nelson, who died in less than one hour after the impact.

Thereafter, Glen H. Nelson was duly appointed administrator of the estate of Rebecca Ann Nelson, and he instituted this action for the wrongful death of Rebecca Nelson. William E. Turner was made a party defendant and dismissed by the court. This cause proceeded against Gary Horton and Anna M. Horton, his mother, who had obligated herself to be responsible for the acts of her son when he, a minor, received his license to drive.

During the trial, it was stipulated that the fair and reasonable expense of burial of the deceased child was $1,-459.15. At the close of the plaintiff's evidence, a motion to direct a verdict in favor of the defendants on the claim that plaintiff had failed to prove pecuniary loss was overruled. The matter was submitted to a jury which returned a verdict for the plaintiff in the sum of $4,500. It is from this verdict that this appeal is taken.

In their appeal, defendants present three assignments

of error: (1) the court erred in denying the motion for directed verdict; (2) the court erred in reading pleadings to the jury; (3A) ample evidence was presented that plaintiff was contributorily negligent; and (3B) no evidence was presented as to pecuniary loss.

The basis of the first assignment of error is the claim that plaintiff failed to establish any pecuniary loss other than the funeral expense. This assignment presents the question of how pecuniary loss may be proved.

The Legislature of Ohio realized the importance of this question when it provided in R. C. 2125.02 that: "The jury may give such damages as it thinks proportioned to the pecuniary injury resulting from such death to the persons, respectively, for whose benefit the action was brought, and the reasonable funeral expenses incurred as a result of the wrongful death."

In the case of *Karr* v. *Sixt* (1946), 146 Ohio St. 527, the court considered this statute and determined at 535, as follows: "Ordinarily a *presumption* of pecuniary loss exists in favor of those legally entitled to services or support from the one killed. Thus, the law presumes pecuniary loss to a parent or parents entitled to the services and earnings of their minor child by the wrongful death of such child even before it has reached an age when it is actually able to render services or assistance of a pecuniary nature * * *."

Again, in the case of *Immel* v. *Richards* (1950), 154 Ohio St. 52, a judgment of $5,000 was entered on a jury verdict in an action for the wrongful death of a child nine months of age. In *Immel, supra,* the trial court admitted evidence to establish the age and health of the child and its parents and the income of the parents. The court upheld the decision in *Karr, supra,* and stated, at 154 Ohio St 53, 54, as follows: "There can be no exact or uniform rule for the determination of the value of services or assistance which the deceased child would have rendered had death not intervened. Factors for consideration are the age, sex and physical and mental condition of the child and the position in life, occupation and physical condition

of the parents. The value of the services is to be estimated on the basis of what children in the same condition and station of life and of like capabilities are ordinarily worth * * *." See also *Wasilko* v. *United States* (1967), 50 Ohio Op. 2d 290.

Counsel for defendants cites *Murray* v. *Long* (1968), 21 Ohio App. 2d 194 as authority for the proposition that a failure to present evidence of a dollar value on the services of a son by parents in a wrongful death case will prevent recovery of pecuniary damages. Regardless of the holding in this case, the expression of the Supreme Court in *Karr* and *Immel, supra,* remains the law of Ohio.

R. C. 2125.02 confers wide discretion on a jury in determining the pecuniary damage in the wrongful death of an infant. This delegation of discretion is a result of the difficulty in proving specific monetary damage to the parents arising from the wrongful death of their children who are too young to be wage earners. A requirement of direct evidence of specific monetary loss would effectively foreclose the proof of any damages, except funeral expense, for the wrongful death of a child. It is well settled by statute and case law that the jury is empowered to estimate pecuniary damages for the loss of a child and when its experience and judgment is fortified with the knowledge of the age, sex, and the physical and mental characteristics of the child, it is capable of making such determination.

The record in the instant case includes all the necessary evidence to permit the jury to establish the basis for its verdict in the sum of $4,500, and the motion for a directed verdict was properly overruled.

For the reason given, assigned error number one is not well taken.

In assignment of error number two, defendants claim the trial court read the pleadings to the jury which is prohibited by Rule 8 (G), Rules of Civil Procedure. The record does not support such claimed error and this assignment of error is not well taken.

In part (A) of defendants' assigned error number three, it is claimed that the verdict of the jury is manifest-

ly against the weight of the evidence in that it demonstrates the father of the deceased child was guilty of contributory negligence. A review of the record fails to support this claim and it is without merit.

Part (B) of the third assignment of error attacks the verdict of the jury as being excessive. Based upon the record, the discretion to be exercised by the jury, and precedents approved in cases dealing with this subject presented herein, this assignment of error is without merit.

For the reasons presented, we conclude the judgment of the Court of Common Pleas of Clermont County, Ohio, should be, and the same hereby is, sustained.

*Judgment affirmed.*

YOUNG and SHANNON, JJ., concur.