TERVEER ET AL., ADMRS., APPELLANTS,
*v.* BASCHNAGEL, APPELLEE.

(No. 81AP-684—Decided August 5, 1982.)

*Messrs. Glander, Brant, Ledman & Newman, Mr. Charles E. Brant* and *Mr. J. Stephen Teetor,* for appellants.

*Messrs. Hamilton, Kramer, Myers, Summers & Cheek, Mr. Charles N. Myers, Jr.* and *Ms. Evelyn J. Stratton,* for appellee.

MOYER, J. This matter is before us on plaintiffs' appeal from a judgment entry of the Court of Common Pleas of Franklin County overruling plaintiffs' motion for a new trial. The judgment from which the motion for a new trial was taken was based on a jury verdict finding defendant liable for $3,163.56 as funeral expenses for Jane Terveer and no liability for the wrongful death of Jane Terveer.

In May 1977, Jane Terveer (decedent) was killed when an automobile in which she was riding was accidentally driven by defendant, Brian Baschnagel, into a bridge abutment in Illinois. Defendant admitted liability for the accident and paid the funeral expenses. The decedent was survived by her father, mother, three sisters and two brothers.

At the time of the accident, decedent was twenty-two years old and was working as a dental hygienist with two dentists in Columbus, Ohio. The evidence is unrefuted that she was an honor student, participated in many activities and was a gifted artist.

At the time of her death, decedent was living and sharing expenses with a sister, helped her parents with their rental properties, regularly cut her brothers' hair, regularly cleaned her family's teeth, and assisted her sister Joannie in her course work in dental hygiene at Ohio State University. Her sister also testified that the decedent was saving money to pay back her parents for loans they had given her for school and for her car. Decedent had also planned to purchase real estate with her sisters, as they had done upon the advice of their father. Plaintiffs assert the following six assignments of error in support of their appeal:

"I. The verdict of no pecuniary damages and the judgment thereon is inadequate, against the manifest weight of the evidence, not supported by the record, and contrary to law.

"II. The admission, over objection, of testimony of defendant concerning his alleged charitable work, athletic scholarship, and personal activities both before and after the death of decedent was ir-

relevant to the issue of damages and was prejudicial error.

"III. The admission, over objection, of defendant's speculative testimony concerning possible marriage to decedent was error and prejudicial.

"IV. The Court erred in admitting, over objection, evidence of the worth of the parents of the decedent.

"V. The trial court erred in charging the jury that the amount of any award was not subject to federal income taxes and that, in calculating any loss based upon future earnings of decedent, the jury should deduct federal income taxes from those earnings.

"VI. Where the evidence shows that decedent was artistic, regularly bestowed her art work on her next of kin, and that her artistic skills enhanced her earning potential, the refusal of the trial court to admit examples of such art work into evidence was error and prejudicial."

The first assignment of error presents the difficult question of whether the jury verdict is supported by some competent, credible evidence going to all the essential elements of the case. If it is supported by such evidence, we may not reverse the jury verdict. *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

The awarding of pecuniary damages to the survivors of a deceased person is not an exact science. "Ordinarily, a *presumption* of pecuniary loss exists in favor of those legally entitled to services or support from the one killed." *Karr* v. *Sixt* (1946), 146 Ohio St. 527, 535 [33 O.O. 14]. The law presumes pecuniary loss to parents entitled to the services and earnings of their child. The factors to be considered are " 'the age, sex and physical and mental condition of the child and the position in life, occupation and physical condition of the parents. The value of the services is to be estimated on the basis of what children in the same condition and station of life and of like capabilities are ordinarily worth * * *.' " *Nelson* v. *Hor-*

*ton* (1971), 31 Ohio App. 2d 159, 161-162 [60 O.O.2d 246]. R.C. 2125.02 does not require a jury to receive direct evidence of a specific monetary loss in awarding damages for wrongful death. A jury is empowered to estimate pecuniary damages for the loss of a child, and it may include the prospective advantages of a pecuniary nature which have been cut off by the premature death of the person from whom such advantages would have proceeded. *Nelson* v. *Horton, supra.* Brothers and sisters also have a standing to sue for damages in a wrongful death action. *Greer* v. *Bd. of Commrs.* (1927), 33 Ohio App. 539.

Two experts, trained in economics, testified for the parties. Plaintiffs' expert testified that decedent would have accumulated an estate of over $200,000 had she lived to her life expectancy and defendant's expert testified that she would have accumulated $12,000 in the same period. Because of our disposition of the third assignment of error, those facts are relevant to our disposition of the first assignment of error. Our review of the record causes us to conclude that the verdict of the jury is against the manifest weight of the evidence. At a minimum, damages should have been awarded for the loss of decedent's services in helping her parents with their rental properties, cutting her brothers' hair, and cleaning her family's teeth, for the loss of rental and related expenses to her sister, and for the loss from her inability, as a result of her death, to repay the loans her parents had made to her. There was no evidence indicating the decedent would not have repaid the loans to her parents, and there was evidence indicating she would have repaid them. The jury also should have determined the value of the estate the decedent would have accumulated had she lived. Decedent's future income was not as speculative as the future income of a minor, which has been recognized as pecuniary loss in a wrongful death action. *Cincinnati Traction Co.* v. *Cahill* (1922),

16 Ohio App. 496; *Chester Park Co.* v. *Schulte* (1929), 120 Ohio St. 273.

While a jury of one's peers may believe that some of the services provided by the decedent to members of her family represent gestures of friendship found in close family relationships, it is not for the jury to decide that such gestures, which clearly have a pecuniary value, may not be the basis for an award of damages. The jury's verdict is clearly inadequate in this case, and the first assignment of error is sustained.

In support of their second assignment of error, plaintiffs argue that testimony regarding defendant's charitable, personal and athletic activities is irrelevant to the question of the pecuniary loss suffered by plaintiffs as a result of decedent's death. We agree. The sole issue presented to the jury was the amount, if any, of the economic or pecuniary loss to the plaintiffs that resulted from defendant's admitted liability. Where liability has been admitted and the issue to be determined by the jury is damages only, "[e]vidence in the trial of a case should be confined to the issues, free from any extrinsic, inflammatory or prejudicial matters that could influence the jury." *Johnson* v. *Knipp* (1973), 36 Ohio App. 2d 218, 222 [65 O.O.2d 342]. Defendant argues that it was important for the jury to be acquainted with defendant in order that his statements that he would have married plaintiff would be believable. Defendant's credibility was not challenged and his character was not made an issue by plaintiffs. The trial court erred to the prejudice of plaintiffs by overruling plaintiffs' objection to the testimony regarding defendant's activities. See Evid. R. 608(A)(2). Any probative value of the evidence of defendant's scholastic, charitable and personal activities and his feeling of grief upon being informed of decedent's death, when not offered to rebut plaintiffs' evidence, is outweighed by the probability of a prejudicial impact upon the trier of fact. Defendant's character and the nature of his experiences prior to decedent's death have no relevancy to the damage question in this case and were, therefore, inadmissible under Evid. R. 403. The second assignment of error is sustained.

The third assignment of error raises an issue that apparently has not been decided by a reported decision of any Ohio appellate court. The question is whether marriage of a child or probability of marriage of a child is admissible evidence in determining the measure of damages by parents in a wrongful death action following the death of the child. R.C. 2125.02, as it applies to this case, provides no guidance. In the case of *Davis* v. *Guarnieri* (1887), 45 Ohio St. 470, the Supreme Court held that, in a wrongful death action by the administrator of a deceased wife for the benefit of her surviving husband and children, evidence that the husband had remarried and that his second wife performed services and duties and contributed as his first wife to the support of the family and the accumulation of property was not admissible in mitigation of damages. The court observed that, upon plaintiff's appointment as administrator, the right of action vested in him and the measure of recovery did not become impaired by a marriage that occurred subsequent to the filing of the action.

Plaintiffs argue that the principle in *Davis* should be applied to this case and that evidence that defendant probably would have married the decedent had she lived is inadmissible because the rights of the next of kin vested on the date of defendant's tortious act.

A majority of the states that have considered the specific issue raised by the third assignment of error have developed a rule that provides that the contingency of marriage may be considered in determining the amount recoverable by surviving parents for the wrongful death of a child. Annotation, 7 A.L.R.2d 1380, 1381,

Section 2. We believe that to be the better rule. Such evidence should be admissible, subject to the jury's determination of the weight to be afforded it.

Plaintiffs further argue that the opinion offered at trial by defendant that, "* * * if she [decedent] was alive today, I'd bet my life on it that I'd be married to her right now," was an inadmissible, self-serving and speculative statement. The only rule against a self-serving declaration prohibits the admission of such a statement when not made under oath or in the absence of the adverse party. There is no rule against a party's making a statement in trial that tends to serve his interest. Such conduct occurs in virtually every trial.

Nor is the statement so speculative as to make it inadmissible. The jury was free to give the statement such weight as it deemed appropriate in the context of the other evidence that tended to prove defendant and decedent had no plans to be married.

Plaintiffs contend that evidence of the income, assets and net worth of decedent's parents has no relevancy to the issue of damages in a wrongful death case where no claim is made that the decedent-child would have supported her parents. Assuming that to be an accurate statement of the law, plaintiffs herein opened the subject area on direct testimony by revealing Mr. Terveer's annual salary, his interest in investments in the stock market and his ownership of rental property. The trial court, therefore, did not err in permitting defense counsel to cross-examine Mr. Terveer on that subject matter, and the fourth assignment of error is, therefore, overruled.

In support of their fifth assignment of error, plaintiffs contend that under Ohio law the jury is to consider the gross income of a decedent rather that the net income after taxes and that it is, therefore, improper for the trial court to instruct the jury that its award is not subject to federal income taxes.

Defendant argues that the case of *Norfolk & Western Ry. Co.* v. *Liepelt* (1980), 444 U.S. 490, changed the law of Ohio to permit an instruction such as that given by the trial court in this case. In a recent decision of the Eighth District Court of Appeals, the effect of *Liepelt* was discussed. A copy of the case was submitted on stipulation by both parties at plaintiffs' request. It is *Kaiser* v. *Ohio Bell Tel. Co.* (Aug. 27, 1981), Cuyahoga App. No. 43056, unreported. The court, at page 2 of the opinion, stated:

"The United States Supreme Court has held that, in cases brought under the Federal Employers' Liability Act (FELA), evidence of income tax consequences on damages awards should be admitted, *Norfolk & Western Railway Co.* v. *Liepelt* (1980), 440 U.S. 490, 493-494, 498, 62 L.Ed. 2d 689, 693-694, 696.

"However, there is authority for confining the *Liepelt* proposition to FELA cases, *Spinosa* v. *International Harvester Co.* (1st Cir. 1980), 621 F. 2d 1154, 1158-1159.

"The *Spinosa* court also indicated that in non-FELA cases in state court, state law determines the admissibility of evidence related to tax effects on an award of damages."

It is well-settled that the states are generally free to fashion their own statutory and common-law rights of action and develop their own procedures. *Broderick* v. *Rosner* (1935), 294 U.S. 629; *Bute* v. *Illinois* (1948), 333 U.S. 640. Under Ohio law, the jury is to consider the gross income of the decedent and not the net income after taxes and deductions. *Maus* v. *New York, Chicago & St. Louis Rd. Co.* (1956), 165 Ohio St. 281 [59 O.O. 366]; *Smith* v. *Pennsylvania Rd. Co.* (App. 1950), 47 O.O. 49. In the *Maus* case, the Supreme Court stated that the reason for the rule against permitting the jury to be instructed to deduct certain amounts

from their gross damage determination is that:

"* * * [T]he effect would be to give the jury license to disregard the charge on the measure of damages already given. * * *" (*Maus, supra,* at 285.)

The fifth assignment of error is well-taken and is sustained.

With respect to the sixth assignment of error, we find no abuse of discretion in the trial court's sustaining of defendant's objection to the admission of pictures depicting the decedent's art work. There was no testimony that decedent had sold any of her art work, only that she used her artistic skills in her job with the Alliance Recreation Department. The trial court's ruling is supported by Evid. R. 403(A), which provides that relevant evidence may be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. There was no question that the decedent had considerable artistic ability. Although the pictures demonstrated her ability, they had only minimal probative value to a determination of her future earnings as a dental hygienist and were properly ruled inadmissible by the trial court because their probative value was outweighed by the danger that they could unduly arouse the sympathy of the jury toward plaintiffs. The sixth assignment of error is overruled.

The first, second and fifth assignments of error are sustained, and the third, fourth and sixth assignments of error are overruled.

Wherefore, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this decision and in accordance with law.

*Judgment reversed
and cause remanded.*

REILLY and BROWN, JJ., concur.

BROWN, J., retired, of the Court of Common Pleas of Coshocton County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.